UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>MARK A. JONES,<br><br>     Defendant. | 16-CR-10220-MLW |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The government submits this memorandum in advance of the sentencing of the defendant, Mark A. Jones (the "defendant"). The government concurs with the Probation Office that the applicable United States Sentencing Guidelines (the "Guidelines" or "USSG") level in this case is 27 with acceptance of responsibility, as set forth in the draft Pre-Sentence Report[1] ("PSR").[2] Based on the defendant's criminal history category of I, the Guidelines Sentencing Range ("GSR") is 70 to 87 months in prison. For the reasons detailed below and based on the factors described in 18 U.S.C. § 3553(a), the government respectfully submits that a sentence below this GSR is reasonable and appropriate. Specifically, given the circumstances of the offense, the history and characteristics of this defendant, and the need for general deterrence, the

---

[1] The final pre-sentence report is due on January 10, 2017. See Dkt. No. 43. The government understands, however, that the Court has received a copy of the draft pre-sentence report.

[2] As set forth further below, although the government agrees with the Probation Office's conclusion that the offense level is 27, the government reaches that conclusion in a different way because it is of the view that—as noted in the plea agreement—the 2014 Guidelines apply. The Probation Office applied the November 1, 2016 Guidelines. (PSR ¶ 21). The government and the defendant agreed in the plea agreement to apply the Guidelines as of November 1, 2014, because, as analyzed in more detail below, the more recent Guidelines were amended after the period of the fraudulent conduct and are arguably less favorable to the defendant. See Dkt. No. 22.

1

government recommends a sentence of 50 months in prison.

## BACKGROUND

The defendant was charged initially by complaint with wire fraud, 18 U.S.C. § 1343, and arrested on March 13, 2016, when he was traveling from Jamaica to the United States. See Dkt. Nos. 4 and 7. On September 16, 2016, the defendant pleaded guilty to one count of wire fraud, 18 U.S.C. § 1343, and one count of engaging in monetary transactions in proceeds of specific unlawful activity, 18 U.S.C. § 1957, pursuant to a plea agreement. See Dkt. Nos. 22 and 30. As described in more detail below and in the PSR, the defendant operated a large-scale Ponzi scheme.

## FACTS

### I. Fraudulent Conduct

From at least February 2008 through April 2015, the defendant raised millions of dollars in investments from a number of investors for the purported purpose of providing financing to Jamaican businesses.[3] (PSR ¶ 8). More specifically, the defendant claimed that he would use investor money to provide "bridge" financing to Jamaican businesses in order to bridge the period of time between the date on which a business needed financing and the date by which financial institutions would eventually loan money. (PSR ¶ 8). The defendant's investors were misled into believing that they would—and did—earn significant interest on their investments. (PSR ¶ 8). To that end, the defendant provided them with account statements that detailed their purported investment balance and the interest they earned. (PSR ¶ 9). In reality, however, the defendant lied because he did not use investor money as promised, nor was he paying interest derived from investments. (PSR ¶ 9).

---

[3] The defendant resided in Jamaica during this period of time. (PSR ¶¶ 8, 42).

As set forth in detail in the PSR, the defendant used new investor money to repay other investors. (PSR ¶¶ 9 – 15). Indeed, in approximately November and December 2014, the defendant took $300,000 from an investor and paid other investors with that money. (PSR ¶¶ 10-12). Specifically, on or about November 17, 2014, the defendant deposited $300,000 on behalf of one of his investors, who believed she was investing in the defendant's "Bridge Fund." (PSR ¶ 10). However, the defendant used this money to pay other investors, who he misled into believing that they were receiving interest or repayment of their invested principal. (PSR ¶¶ 11-12).

As the months passed, the defendant knew he would need more money to carry on the charade. In January 2015, the defendant solicited and obtained another $200,000 from an investor. (PSR ¶¶ 14-15). In fact, this investor had already invested more than $1 million dollars with the defendant. (PSR ¶ 13). However, instead of using the $200,000 for an investment, the defendant—just as he had done in November and December 2014—misused the money by giving it to other investors. (PSR ¶ 15).

Notwithstanding the foregoing, the defendant continued to lull his victims into a false sense of security through the summer of 2015 even though, as the defendant knew, he was engaged in a fraudulent scheme and was unable to fulfill his obligations. (PSR ¶ 16). The defendant told at least one investor that the money would be forthcoming when the money was gone. (PSR ¶ 16); see Victim Impact Statement ("VIN") 4922802 at 1. As with most Ponzi schemes, the defendant's house of cards collapsed in 2015 and he left significant investor harm in his wake. (See PSR ¶¶ 17-18).

**II.   Victims**

As described in victim impact statements, the defendant's fraudulent scheme caused significant financial losses and additional harm beyond that which can be quantified.  See VINs, attached to the PSR:

- "My nightmare started July 8, 2015 when one of the investors called and said [the defendant] was not responding to her emails . . . [t]he $300,000 that I am losing was meant for my grandchildren to help with their education."  VIN 4952625 at 1-2.

- "This has had an immense impact on my quality of life, health, and mental health . . . [i]n order to financially support my basic needs of food, shelter and medication costs, I have had to sell all of my precious possessions."  VIN 4922802 at 1.

- "I am also retired and was looking forward to the next chapter of my life.  However, I've been forced to go back to work until I can recoup the money that I lost and get myself back on solid footing."  VIN 4949145.

The following table further demonstrates financial losses experienced by 14 of the defendant's investors:

| Investor | Total Invested | Total ROI | Net Investment Balance | Loss Amount |
|---|---|---|---|---|
| 1 | $ 100,000.00 | $ 45,000.00 | $ (55,000.00) | $ 55,000.00 |
| 2 | $ 930,000.00 | $ 762,005.77 | $ (167,994.23) | $ 167,994.23 |
| 3 | $ 175,000.00 | $ 140,588.47 | $ (34,411.53) | $ 34,411.53 |
| 4 | $ 180,000.00 | $ 143,948.75 | $ (36,051.25) | $ 36,051.25 |
| 5 | $ 1,171,745.00 | $ 1,100,353.80 | $ (71,391.20) | $ 71,391.20 |
| 6 | $ 539,328.74 | $ 200,005.94 | $ (339,322.80) | $ 339,322.80 |
| 7 | $ 300,000.00 | $ 93,094.71 | $ (206,905.29) | $ 206,905.29 |
| 8 | $ 300,000.00 | $ 292,100.00 | $ (7,900.00) | $ 7,900.00 |
| 9 | $ 1,760,000.00 | $ 100,000.00 | $ (1,660,000.00) | $ 1,660,000.00 |
| 10 | $ 278,000.00 | $ 168,519.20 | $ (109,480.80) | $ 109,480.80 |
| 11 | $ 800,000.00 | $ 212,841.53 | $ (587,158.47) | $ 587,158.47 |
| 12 | $ 295,081.75 | $ 224,311.11 | $ (70,770.64) | $ 70,770.64 |
| 13 | $ 100,000.00 | $ - | $ (100,000.00) | $ 100,000.00 |
| 14 | $ 550,000.00 | $ 247,347.00 | $ (302,653.00) | $ 302,653.00 |
| Total | | | | $ 3,749,039.21 |

The government is also aware of other investors—in addition to the 14 victims referenced in Paragraph 18 of the PSR—who may qualify as victims of the defendant's fraudulent scheme pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771, even though they did not incur recognizable losses pursuant to the Guidelines calculations.

For example, the government provided to the Probation Office a victim impact statement from an investor who is identified by the number 4896749, which investor is not referenced in

the table above. Nevertheless, the investor authored a powerful statement explaining, among other things: "I am in financial rubble. I have been paying long term insurance for years. I have had to let it go because it is not affordable. The cutbacks I have enacted make life almost unbearable. The effect it has had on my emotional well being [sic] is devastating." VIN 4896749 at 2.

As is clear from the victims' statements, the defendant's conduct caused dire consequences to a number of individuals.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

Pursuant to 18 U.S.C. § 3553(a), the sentence imposed should be sufficient, but not greater than necessary, to achieve the purposes set forth in that statute. See 18 U.S.C. § 3553(a); see, e.g., Kimbrough v. United States, 552 U.S. 85, 101 (2007). In fashioning a sentence, the Court is to consider the advisory Guidelines range, and then proceed to review the factors set forth in Section 3553(a)(2), although the "weighting of those factors is largely within the court's informed discretion." United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012) (internal marks and citations omitted). 18 U.S.C. § 3553(a) also "invite[s] the district court to consider, broadly, the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed . . . to protect the public from further crimes of the defendant." United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008) (internal marks omitted). The statute also expressly calls for consideration of general deterrence. See id. The resulting sentence must be reasonable. Kimbrough, 552 U.S. at 111. Here, a sentence of 50 months is both reasonable and necessary to effectuate the purposes of 18 U.S.C. § 3553(a).

the table above. Nevertheless, the investor authored a powerful statement explaining, among other things: "I am in financial rubble. I have been paying long term insurance for years. I have had to let it go because it is not affordable. The cutbacks I have enacted make life almost unbearable. The effect it has had on my emotional well being [sic] is devastating." VIN 4896749 at 2.

As is clear from the victims' statements, the defendant's conduct caused dire consequences to a number of individuals.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

Pursuant to 18 U.S.C. § 3553(a), the sentence imposed should be sufficient, but not greater than necessary, to achieve the purposes set forth in that statute. See 18 U.S.C. § 3553(a); see, e.g., Kimbrough v. United States, 552 U.S. 85, 101 (2007). In fashioning a sentence, the Court is to consider the advisory Guidelines range, and then proceed to review the factors set forth in Section 3553(a)(2), although the "weighting of those factors is largely within the court's informed discretion." United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012) (internal marks and citations omitted). 18 U.S.C. § 3553(a) also "invite[s] the district court to consider, broadly, the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed . . . to protect the public from further crimes of the defendant." United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008) (internal marks omitted). The statute also expressly calls for consideration of general deterrence. See id. The resulting sentence must be reasonable. Kimbrough, 552 U.S. at 111. Here, a sentence of 50 months is both reasonable and necessary to effectuate the purposes of 18 U.S.C. § 3553(a).

**I.      Advisory Guidelines Range**

Pursuant to the plea agreement filed in this case, the parties agreed to apply the November 1, 2014 Guidelines.  See Dkt. No. 22 at 2.  As noted above, the November 1, 2015 and November 1, 2016 amendments occurred after the period of the alleged fraudulent scheme and are arguably less favorable to the defendant.  Specifically, five or more victims may have suffered a "substantial financial hardship."  See § 2B1.1(b)(2)(B) of the November 1, 2016 Guidelines.  For example, several victims submitted statements in which they disclosed loss to retirement funds (see VIN 4922802 at 1, attached to the PSR, and VIN 4949143, which was provided to the Probation Office); loss to educational funds (see VIN 4952625 at 2, attached to the PSR); and changes to retirement plans (see VIN 4949145, attached to the PSR), and the government is aware of at least one other investor who appears to have lost retirement funds.  See Application Note 4(F) to USSG § 2B of the November 1, 2016 Guidelines (defining "substantial financial hardship").  This four-point substantial financial hardship enhancement was not available in the 2014 Guidelines.  Rather, the parties agreed that the two-point enhancement for an offense that affected 10 or more victims applies here.  See § 2B1.1(b)(2)(A)(i) of the November 1, 2014 Guidelines.

Using the November 1, 2014 Guidelines, the parties further agree that (1) the base offense level is seven pursuant to USSG § 2B1.1(a)(1); (2) an enhancement of 18 should be applied pursuant to USSG § 2B1.1(b)(1)(J) because the loss exceeded $2,500,000; (3) an enhancement of two should be applied pursuant to USSG § 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims; (4) an additional enhancement of two should be applied pursuant to USSG § 2B1.1(b)(10)(B) because a substantial part of the scheme was committed from outside of the United States; and (5) an enhancement of one applies pursuant to USSG §

2S1.1(b)(2)(A)[4] because the defendant engaged in monetary transactions in proceeds of specified unlawful activity (18 U.S.C. § 1957) in connection with engaging in wire fraud (18 U.S.C. § 1343). See Dkt. No. 22 at 2-3.[5]

The sum of the above-referenced Guidelines is a base offense level of 30, which the government recommends be reduced by three levels because of the defendant's acceptance of responsibility. An offense level of 27 and a Criminal History Category of I results in an advisory Guidelines range of 70 to 87 months of incarceration. However, as set forth below, the government recommends a period of incarceration of 50 months.

## II.  50 Months' Incarceration is an Appropriate Sentence for the Defendant

The government respectfully requests that a sentence of 50 months of incarceration (which is below the Guidelines range of 70 to 87 months), 36 months of supervised release, and restitution in the amount of $3,749,039.21 be imposed in this case. There are several reasons underlying this recommendation.

---

[4] The plea agreement incorrectly references USSG §2S1.1(a)(1) as the basis for the one-point enhancement. See Dkt. No. 22 at 3.

[5] As of December 15, 2016, the defendant has not provided a psychological report for the government's review. However, the government understands that the defendant may seek a further reduction to a prospective period of incarceration based on a psychological report pursuant to USSG § 5K or as a variance. The government does not believe that there are grounds for any reduction based on any psychological issues. Indeed, as set forth in the PSR, the defendant made no mention of any psychological issues. (PSR ¶ 57). Beyond the bare assertion to the Probation Office that he suffers from depression and sought counseling in 2012 and 2013 (PSR ¶ 57), the defendant offers no actual evidence that he suffered from any "diminished capacity" at the time of the offense. The defendant also failed to provide any evidence concerning his state of mind during the pendency of the crime that would warrant a variance. Therefore, the defendant has not demonstrated sufficient evidence to justify a reduction to his sentence for any reason derived from a psychological condition. The government reserves its rights to amplify its analysis concerning the defendant's psychological condition by December 30, 2016. See Dkt. No. 43.

First, the defendant's conduct was clearly serious and egregious. The table included herein demonstrates that the defendant caused substantial monetary loss. As described in the victim impact statements, the defendant also caused additional immeasurable harm. In many cases, elderly investors entrusted the defendant with savings that they hoped would be a secure and reliable source of money for years. Now, these investors have to rebuild their lives. A significant period of incarceration is warranted in order to hold the defendant accountable for the dire consequences inflicted on others as a result of his actions.

Second, general deterrence is an important and relevant consideration here. Investment advisors, entrepreneurs, brokers, and people in similar positions are entrusted with immense sums of money every day. A period of incarceration of 50 months sends a strong message that the consequences of misusing investors' money are severe.

However, the government respectfully believes that the defendant's conduct should be balanced against the defendant's <u>prompt</u> acceptance of responsibility. While a 50-month period of incarceration advances the goal of general deterrence for the reasons set forth above, the government also believes that a 50-month period of incarceration advances the interests of law enforcement and victims by encouraging wrongdoers to promptly accept responsibility. Indeed, prompt acceptance of responsibility can provide some closure to victims while also affording the government the opportunity to reallocate its resources towards ferreting out other misconduct.

The government recognizes that defendants are often granted a three-point reduction in the Guidelines calculations for acceptance of responsibility. However, the government believes that a further reduction is appropriate here because of how quickly the defendant accepted responsibility. The defendant was arrested on March 13, 2016. Within weeks, the defendant met with the government, confessed, and availed himself of a lengthy interview in which he

9

provided detailed information concerning the scheme and information concerning his financial accounts. By July 29, 2016, the government filed an Information and plea agreement. See Dkt. Nos. 21 and 22. The government respectfully submits that reaching a resolution to a complex fraud case, particularly when the defendant accepts responsibility, within four months is quite remarkable and an important consideration. A long, drawn-out process could have inflicted additional damage to those investors who have already suffered so much. Instead, the prompt resolution of this case should, ideally, assist in providing some closure to the defendant's victims by mitigating the need for them to relive their experiences through the prospects of trial testimony months, if not years, down the road.

In a similar vein, the government believes that any credit the defendant receives for acceptance of responsibility should be magnified by his desire to repay victims. As described in the PSR, the defendant has a stake in a call center. (PSR ¶ 63). The government understands that the United States Securities and Exchange Commission is seeking to monetize the defendant's stake, and that the defendant has been cooperative in the efforts to liquidate this asset for the purpose of recompensing his victims.[6] Moreover, even though the defendant may not have substantial assets at his disposal now, the government believes that the defendant wants to prioritize repaying victims. A period of incarceration of 50 months—as opposed to a longer sentence—would afford the defendant the opportunity to meet any restitution demands sooner, rather than later.

For these reasons, a 50-month sentence strikes an appropriate balance between the importance of demonstrating accountability and deterrence, while also serving the ends of justice by communicating to wrongdoers that if they have engaged in crime the appropriate response is

---

[6] See SEC v. Mark Jones, 16-cv-10524-RGS.

to admit to their misconduct and to work with law enforcement and/or civil regulators towards recouping lost money.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of 50 months of incarceration, 36 months of supervised release, and restitution.

                                          Respectfully submitted,

                                          CARMEN M. ORTIZ
                                          United States Attorney

                    By:    /s/ Eric A. Forni
                           Eric A. Forni
                           Special Assistant United States Attorney

Dated: December 16, 2016

## CERTIFICATE OF SERVICE

I certify that on December 16, 2016, this document was filed through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

                                          /s/ Eric A. Forni
                                          Eric A. Forni